John V. Decolator, Esq.
Law Office of Stephen B. Kaufman, P.C.
3397 East Tremont Avenue
Bronx, NY  10461
(718) 822-0500


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

GIOVANNI RIVERA,

                        Plaintiff,

      -   Against –

THE PORT AUTHORITY OF NEW YORK AND
NEW JERSEY, KEVIN J. O'TOOLE, CHAIRMAN,
THE PORT AUTHORITY POLICE DEPARTMENT,
EDWARD CETNAR, SUPERINTENDENT,
LT. SCOTT POMERANTZ, DET. LT. STEVEN
ANDELHELM, THE PORT AUTHORITY POLICE
BENEVOLENT ASSOCIATION, INC., POLICE
OFFICER FRANK CONTI, FIRST VICE PRESIDENT,
PORT AUTHORITY POLICE BENEVOLENT
ASSOCIATION POLITICAL ACTION COMMITTEE, INC.,
and POLICE OFFICER,

                      Defendants.

-----------------------------------------------------------------X

Civil Action No. 20-CV-1350


**AMENDED
COMPLAINT AND
DEMAND FOR
JURY TRIAL**

Plaintiff, GIOVANNI RIVERA, by and through his attorney(s) The Law Office of Stephen B. Kaufman, P.C. complaining of the defendants herein, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff brings this civil rights action seeking relief for the Defendants' violation of his civil rights and property rights, as secured by the Civil Rights Act of 1871 and codified under 42 U.S.C. §1981 and 42 U.S.C. §1983 and by the Fourth, Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States; Plaintiff brings this action for breach of contract, conspiracy and tortious interference seeking relief for the Defendants' violation of his civil rights, and violation of his property rights as secured by the Civil Rights Act of 1871 and codified under 42 U.S.C. §1985, 42 U.S.C. § 1983 and by the Fourth, Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States; and by the laws of the State of New York for failure to provide his salary during the pendency of his suspension, for failure to provide representation pursuant to the terms of the Memorandum of Agreement between the Plaintifff, PAPD and PAPBA, for conspiring to interfere with plaintiff's civil rights and plaintiff's constitution rights and for acts of harassment, intimidation and discrimination for failing to intervene to prevent plaintiff's constitutional rights from being violated, for defendants' failure to properly supervise and for defendants' intentional infliction of emotional distress upon the plaintiff herein.

## JURISDICTION AND VENUE

2.      This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 42 U.S.C § 1981, 42 U.S.C. § 1983 and 42 U.S.C §1985(2) and (3) as this action seeks redress for violations of Plaintiff's constitutional rights.

3.      Pursuant to 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over the state constitutional and state law claims set forth below, which are so related to the claims within this Court's original jurisdiction that they form part of the same case or controversy.

4.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C §§ 1391, 1332 because Defendants' THE PORT AUTHORITY OF NEW YORK and NEW JERSEY ("Port Authority") and THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY POLICE DEPARTMENT ("PAPD")'s offices are located in that judicial district; Defendants' agents, servants and employees are in that judicial district and a substantial part of the events or omissions giving rise to the claim occurred in that judicial district.  Defendant THE PORT AUTHORITY POLICE BENEVOLENT ASSOCIATION's principal office is located in Englewood, New Jersey, however is incorporated in the State of New York, maintains both New York and New Jersey phone numbers, substantially conducts business in New York and a substantial part of the events or omissions giving rise to the claim occurred in that judicial district.

## JURY DEMAND

5.      Plaintiff demands trial by jury in this action on each and every one of his claims.

## PARTIES

### Plaintiff

6.      Plaintiff, GIOVANNI RIVERA is a U.S. citizen, and resides in the State of  New York.

7.      At all relevant times, Plaintiff, GIOVANNI RIVERA was an employee of THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY POLICE DEPARTMENT ("PAPD").

## Defendants

### The Port Authority of New York and New Jersey

8.      Defendant THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY

("Port Authority") is a bi-state compact between the State of New York and New Jersey.  Its

main offices are located at 4 World Trade Center, 150 Greenwich Street, New York, New York

10007.

### Kevin J. O'Toole

9.      Defendant, Kevin J. O'Toole, is the Chairman of the Port Authority.

### The Port Authority Police Department of New York and New Jersey

10.     Defendant, THE PORT AUTHORITY POLICE DEPARTMENT ("PAPD") is the

police department for the Port Authority.

### Edward Cetnar

11.     Defendant, Edward Cetnar is the Superintendent and Director of Public Safety of

the Port Authority Police Department.

### Lt. Scott Pomerantz

12.     Lt. Scott Pomerantz, is plaintiff's supervisor and the World Trade Center's "XO"

Officer of Plaintiff's command post.  He was the acting tour commander at the time of plaintiff's

arrest and effectuated plaintiff's arrest.

### Detective Lt. Steven Andelhelm

13.     Detective Lt. Steven Andelhelm was the supervisor of the arrest in the subject

incident.

### The Port Authority Police Benevolent Association, Inc.

14.     Defendant THE PORT AUTHORITY POLICE BENEVOLENT

ASSOCIATION, INC. ("Association") is a Domestic Not-For-Profit Corporation incorporated in

the State of New York.  According to their mission statement:

> "[t]he mission of the Port Authority Police Benevolent Association is the protection,
> enhancement and preservation of Port Authority Police of New York and New Jersey members'
> rights and benefits in all matters related to employment and the execution of members' sworn
> duties through effective representation and professional relationships with the Port Authority of
> New York and New Jersey and local, state and federal government entities.  The Association
> promotes the furtherance of positive community relations and encourages and supports a strong
> fraternal relationship among members.  Above all is the Association's advocacy for the staunch
> adherence of the American law enforcement tenet of selfless service to all."

Its main offices are located at 611 East Palisade Avenue, Englewood Cliffs, NJ  07632-1805.  It

is authorized to conduct business in the State of New York and maintains both New York and

New Jersey phone numbers.

### The Port Authority Police Benevolent Association Political Action Committee, Inc.

15.     Defendant, THE PORT AUTHORITY POLICE BENEVOLENT

ASSOCIATION POLITICAL ACTION COMMITTEE, INC. ("PAC") is a domestic Not-For-

Profit corporation in the State of New York.

### Police Officer Frank Conti, First Vice President

16.     Police Officer Frank Conti is the 1st Vice President of The Port Authority Police

Benevolent Association, Inc. and maintains a position and/or is associated with the Judiciary

Committee of the Association and PAC.

**Police Officer**

17.     Defendant "Police Officer" are all police officers who engaged in a pattern and practice of harassment and discrimination and acts that caused the intentional infliction of emotional distress against plaintiff and deprived plaintiff of his constitutional rights, privileges and immunities.

**FACTS**

*Background*

18.     Plaintiff has been a police officer with the defendant The Port Authority Police Department ("PAPD") since March 30, 2013.

19.     On February14, 2017, Plaintiff was falsely accused and wrongfully arrested for menacing in the second degree, assault in the third degree and harassment in the second degree. (See Exhibit A) The higher misdemeanor charges were later dropped to harassment in the second degree, a violation and non-arrestable offense. (See Exhibit B)

20.     The matter proceeded to the Domestic Violence Part of Westchester Supreme Court.  After nearly two years of adjournment after adjournment, and non-appearance of the complainant, the matter proceeded to trial and plaintiff requested a jury trial.   Thereafter, the District Attorney, lacking any evidence in the matter, dropped the charges to harassment in the second degree, which is a violation and a non-arrestable offense.  (See Exhibit B)  The charge is tantamount to a desk appearance ticket.   Despite plaintiff's request for a jury trial, the reduction in charges by the district attorney circumvented plaintiff's ability to have a jury trial, as the charges were miniscule, plaintiff was no longer entitled to a jury trial thus, a bench trial was set. Plaintiff was ultimately convicted of the violation, on July 11, 2018. (See Exhibit C).  Port

Authority Internal Affairs was present at every court appearance. An appeal is pending on the matter.

### ***Breach of Contract***

### (a)    **Non-payment**

21.    Immediately after the arrest on February 14, 2017, plaintiff was suspended without pay from his employment with the PAPD, and still, four years later, has not received a decision on the hearing concerning his employment, thereby depriving him of a liberty interest without due process of law (his ability to receive his salary and be gainfully employed).

22.    Plaintiff has not received any remuneration since February 14, 2017.

23.    Pursuant to Article XXVIII of the Memorandum of Agreement between the Port Authority of New York and New Jersey and the Port Authority Benevolent Association, Inc. (PAPBA), no employee shall be suspended without pay for more than 30 days. (See Exhibit D). Plaintiff is entitled to receive his back pay and missed overtime opportunities during the pendency of his suspension.

24.    In addition, Plaintiff Giovanni Rivera was deprived of an opportunity to seek outside employment during the pendency of his suspension.

25.    Similarly, both New York and New Jersey state laws addressing law enforcement personnel provide that the period of suspension without pay shall not exceed 30 days for New York officers pursuant to 9 NYCRR 479.10 the NY statute for NY State Police provides that the period of suspension without pay shall not exceed 30 days.

26.    It has been a custom, pattern and practice of the defendants, PAPBA and PAPD to hold any infraction of a PAPD employee over their head to cause them to capitulate to losing their back pay, in order for the PAPD employee to get back to work. It is used as a form of

extortion allowing the PAPD and PAPBA to get out of their contractual obligation to pay, when the PAPD employees are at their most vulnerable state, when they are desperate to survive.  That is the goal of the defendants PAPD, PAPBA, Port Authority and PAC.

27.     Yet, several employees of PAPD, including those that are in a position of authority or are in favor with those that are in a position of authority, who were charged and/or convicted of more serious crimes were not suspended without pay.  They continued to be gainfully employed and continued to receive their salary throughout the criminal proceedings against them and thereafter.

28.     The plaintiff herein has not been able to work for four years now causing him to suffer severe consequences.

**(b)     Failure to provide representation**

29.     Although the mission statement of the PAPBA clearly states that their mission is "[t]he protection, enhancement and preservation of members' rights and benefits in all matters related to employment and execution of members' sworn duties **through effective representation** and professional relationships with the Port Authority of New York and New Jersey and local, state and federal government entities", the PAPBA failed to provide representation to plaintiff herein after not having received remuneration for over four years.

30.     Plaintiff has been woefully deprived of his property rights and liberty, affecting him and his family in an extremely draconian manner.

***Conspiracy***

31.     PAPD internal affairs was in constant communication with the Westchester County District Attorney's office.   Correspondence reveals that the District Attorney's office as well as PAPD internal affairs were both aware of plaintiff's cross-complaint against his accuser

in the underlying criminal complaint, noting that this would delay the trial, but nevertheless, the case would be moved before another judge, as the assigned judge did not hear trials.

32.     PAPD internal affairs maintained communication with various PAPD employees, including PAPBA.

33.     During the same period of time, communications were maintained between plaintiff and other parties with the PAPBA through Police Officer Frank Conti, that made it abundantly clear, that PAPBA was biased against plaintiff.

34.     PAPBA maintained a "Judiciary Committee" which Officer Frank Conti, 1st Vice President of PAPBA was in charge of and/or was associated with.

35.     PAPBA maintained a PAC which Officer Frank Conti, 1st Vice President of PAPBA was in charge of and/or was associated with.

36.     During the course of the underlying criminal proceedings, Plaintiff requested a trial by jury, however, upon his clear request for same, he was denied a jury trial and was moved to a bench trial before the same judge.

37.     PAPBA further influenced attorneys that plaintiff wanted to retain for his representation, who thereafter refused to represent plaintiff.

38.     Correspondence and communication between the PAPD, the District Attorney's office and PAPBA created a conspiracy against plaintiff, causing him to be deprived of his constitutional rights, privileges and immunities including his right to a jury trial, causing him to suffer severe consequences.

### *False Arrest/Unlawful Imprisonment*

39.     Although the arresting officers and supervisors of PAPD were aware of the circumstances surrounding plaintiff's arrest, they did nothing to assist plaintiff who was falsely arrested despite their knowledge.

40.     Several weeks prior to his arrest, Plaintiff requested permission to obtain an Order of Protection against the complainant, but was advised by PAPD that it would adversely affect his job and was denied his request, thus Plaintiff was prevented from protecting himself.  Shortly thereafter, the complainant made vicious, false allegations leading to plaintiff's arrest.

41.     Further, rather than having plaintiff appear on his own recognizance, PAPD superiors allowed plaintiff change into his uniform and report to his commander only to handcuff him and parade him across Ducati Park, the promenade of the World Trade Center and his locker room for the world and other officers to witness as though plaintiff was a hardened criminal.

### *Harassment*

42.     During the pendency of the underlying criminal matter, plaintiff was followed and stalked by members of the PAPD, whose vehicles would suddenly appear in non-PAPD locations, where plaintiff happened to be.

43.     During the course of plaintiff's employment, PAPD employees poured powder on plaintiff's locker, causing those present in the locker room when plaintiff arrived to laugh and humiliate him.

44.     During the course of plaintiff's employment, PAPD employees placed a note on the cabinet in the arrest room, stating "this is Rivera's seat", insinuating that he should be arrested.

45.     During the course of plaintiff's employment, plaintiff Giovanni Rivera suffered an on the job injury twice.  Although Worker's Compensation should have paid for his medical

treatment, his medical bills were kicked back and not paid. There is no procedure in place

notifying where bills should go, and no one knows where to send it. Port Authority and PAPD

violated Department of Labor procedures in that there is nothing posted for employees to be

informed of the correct procedures regarding Worker's Compensation. Shortly after Plaintiff

began employment with the PAPD, plaintiff effected an arrest on a man in the Port Authority

Bus Terminal. The man notified the arresting officers including the plaintiff herein that he was

HIV positive as the arresting officers were in contact with the man's blood. The bill for HIV

testing and treatment has not yet been paid, nearly 8 years after the incident. It appears that only

the bills of the officers who have ties with superiors have their bills paid, but the claims of those

PAPD employees who do not have the influence of a superior do not get the same treatment and

their bills do not get paid.

46.     Further after plaintiff's arrest, all of plaintiff's medical insurance claims were

rejected by PAPD for bills related to his daughter's medical care and treatment from three years

earlier, and bills related to his wife's medical care and treatment after the loss of their child.

None of plaintiff's medical claims were ever rejected prior to plaintiff's arrest.

47.     During the course of his employment, plaintiff contributed to a 401(k) deferred

compensation plan. Plaintiff is permitted to withdraw funds from his account, however, plaintiff

was denied permission to take out the money he contributed, even at a time when he had not

received any remuneration for over four years.

48.     Further, during the course of his employment, plaintiff was forced to work

overtime 4 days in a row, back to back, for a total of 20 hours per days without any relief.

Further, Plaintiff was denied a request for a hotel room and had to either sleep on a cot in the

locker room or drive home one hour to Rockland County where he was living, sleep two hours

and return to work the following day.  The normal cycle is to be forced to work overtime one

day, then rotate to the next employee.   This was done in an effort to annoy and harass the

plaintiff herein without any regard to his welfare or safety.

49.     Plaintiff verily avers that the above referenced actions of the Port Authority,

PAPD and PAPBA, their servants, agents and employees were intentional acts of harassment

against Plaintiff, Giovanni Rivera.

### *Tortious Interference*

50.     As an employee of PAPD, plaintiff is entitled to receive health benefits, worker's

compensation benefits as well as deferred compensation retirement benefits.

51.     During the course of plaintiff's employment, plaintiff Giovanni Rivera suffered

an on the job injury twice.  Although Worker's Compensation should have paid for his medical

treatment, his medical bills were kicked back and not paid.  There is no procedure in place

notifying where bills should go and no one knows where to send it.  PAPBA and PAPD violated

Department of Labor procedures in that there is nothing posted for employees to be informed of

the correct procedures regarding Worker's Compensation.  Shortly after Plaintiff began

employment with the PAPD, plaintiff effected an arrest on a man in the Port Authority Bus

Terminal.   The man notified the arresting officers including the plaintiff herein that he was HIV

positive as the arresting officers were in contact with the man's blood.  The bill for HIV testing

and treatment has not yet been paid, nearly 8 years after the incident.   It appears that only the

bills of the officers who have ties with superiors have their bills paid, but the claims of those

PAPD employees who do not have the influence of a superior do not get the same treatment and

their bills do not get paid.

52.      Further after plaintiff's arrest, all of plaintiff's medical insurance claims were rejected by PAPD for bills related to his daughter's medical care and treatment from three years earlier, and bills related to his wife's medical care and treatment after the loss of their child. None of plaintiff's medical claims were ever rejected prior to plaintiff's arrest.

53.      During the course of his employment, plaintiff contributed to a 401(k) deferred compensation plan.  Plaintiff is permitted to withdraw funds from this account, however, plaintiff was denied permission to take out the money he contributed, even after plaintiff hadn't received any remuneration for over four years.

54.      Defendants' actions denied plaintiff his right to receive benefits he was entitled to and thus deprived him of his property interests, affecting him and his family in an extremely draconian manner.

55.      Plaintiff verily avers that the above referenced actions of Port Authority, PAPD, PAPBA, their agents, servants and employees who tortiously interfered with third parties, were intentional acts of harassment against Plaintiff, Giovanni Rivera.

56.      Defendants' actions denied plaintiff his right to receive benefits he was entitled to and thus deprived him of his benefits and his property rights, causing plaintiff to be deprived of his constitutional rights, privileges and immunities, affecting plaintiff and his family in an extremely draconian manner.

### *Intimidation*

57.      During the pendency of plaintiff's suspension, on numerous occasions, plaintiff was followed and stalked by members of the PAPD, whose vehicles suddenly appeared in non-PAPD locations, where plaintiff happened to be.

58.     Further, on or about September, 2020, after plaintiff's representative for the arbitration appeared on a zoom conference before PAPD employees, agents, servants and superiors, a PAPD vehicle appeared in front of her office, which is located in the Throggs Neck section of the Bronx.   The Port Authority of New York and New Jersey does not maintain any property in the Throggs Neck section of the Bronx, thus PAPD did not have any known business in the Throggs Neck section of the Bronx, for their vehicle to be present outside plaintiff's representative's office.

59.     Plaintiff verily avers that the above referenced actions of Port Authority, PAPD, their agents, servants and employees were intentional acts of intimidation against Plaintiff, Giovanni Rivera.

### *Discrimination*

60.     On or about September 2017, plaintiff's brother-in-law passed away.  It is the custom and practice of PAPD to readily give leave to a PAPD employee to enable the PAPD employee to attend to the needs of their family members.  However, when Lt. Pomerantz learned of plaintiff's request for leave it was immediately denied until Sgt. Woody intervened.

61.     During the course of his employment, plaintiff's supervisor, Lt. Pomerantz called him a "typical Hispanic cocky Spic".  Lt. Pomerantz frequently made degrading racial comments to the plaintiff herein.

62.     In addition, during the course of his employment, plaintiff was forced to work overtime 4 days in a row back to back for a total of 20 hours per day without any relief.   Further, Plaintiff was denied a request for a hotel room and had to either sleep on a cot in the locker room or drive home  one hour to Rockland County where he was living, sleep two hours and return to work, the following day.  The normal cycle is to be forced to work overtime one day, then rotate

to the next employee.  This was done in an effort to annoy and harass the plaintiff herein without any regard for his welfare or safety.

63.     During the course of plaintiff's employment, plaintiff's Facebook account was hacked by his former girlfriend who sent naked pictures of plaintiff to his Facebook account, which was viewed by various members of PAPD.  Officer Peter Ferron obtained plaintiff's picture and rather than protect plaintiff, he proceeded to send his pictures to Lt. Pomerantz and other PAPD officers who laughed about it.   Breach of anyone's Facebook account is a serious matter, let alone an officer's Facebook account.  Rather than protect their employee who already had requested to file an Order of Protection against this person, PAPD officers and supervisors chose to laugh and turn a blind eye when the individual filed charges against plaintiff even though they were aware that plaintiff's account had been hacked.

64.     During the course of his employment, various PAPD officers and supervisors continuously and systematically engaged in actions that discriminated against the plaintiff herein on the basis of his race.

***Failure to Intervene***

65.     During the course of plaintiff's employment, plaintiff's Facebook account was hacked by his former girlfriend who sent naked pictures of plaintiff taken while he was sleeping to his Facebook account, which was viewed by various members of the PAPD.  Officer Peter Ferron obtained plaintiff's picture and rather than protect plaintiff, he proceeded to send his pictures to Lt. Pomerantz and other PAPD officers who laughed about it.   Breach of anyone's Facebook account is a serious matter, let alone an officer's Facebook account.  Rather than protect their employee who already had requested to file an Order of Protection against this person, PAPD officers and supervisors chose to laugh and turn a blind eye when the individual

filed charges against plaintiff even though they were aware that plaintiff's account had been hacked.

66.     On February 3, 2017, plaintiff's Facebook account had been hacked by his former girlfriend, the complainant in plaintiff's underlying criminal case.

67.     On February 3, 2017, plaintiff requested permission from defendants to file an Order of Protection against the complainant, but was denied that request.

68.     Nevertheless, despite defendants' knowledge, plaintiff was falsely arrested 11 days later, on Valentine's Day, and defendants failed to intervene, knowing that plaintiff's constitutional rights, privileges and immunities were being violated.

***Intentional/Negligent Infliction of emotional distress***

69.     Draconian efforts to thwart Plaintiff's ability to receive his back pay although contractually and statutorily obligated to do so, caused plaintiff to suffer extreme emotional distress with physical ramifications.

70.     The various consistent and systematic acts of harassment, discrimination, intimidation and intentional disparate treatment by PAPD and PAPBA agents, servants and employees and superiors caused an intentional infliction of emotional distress upon the plaintiff herein.

## AS AND FOR A FIRST CAUSE OF ACTION
*(Loss of property interest under 42 U.S.C. §1983)*

71.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "70" with the same force and effect as if fully set forth herein.

72.     All of the aforementioned acts of defendants, their agents, servants and employees were carried out under color of state law.

73.    Plaintiff, Giovanni Rivera became employed by the PAPD on March 30, 2013 as a Police Officer.

74.    On February 14, 2017, Plaintiff Giovanni Rivera was arrested and was immediately suspended without pay.

75.    Since February 14, 2017, plaintiff has not received any remuneration and has been unable to seek employment pending a determination of his employment status due to the PAPD's failure to conduct a hearing and due to PAPD's failure to permit any outside employment while the hearing is pending due to PAPD's interference.

76.    It is now four years after the subject incident, and although Officer Rivera has repeatedly asked for a hearing, a hearing still has not been conducted.  Although hearing dates have been scheduled, the hearing dates have been repeatedly adjourned at the last moment, thus depriving Officer Rivera redress for his lost wages and his return to employment.

77.    Pursuant to State law, although plaintiff may continue to be suspended, he must receive his salary after 30 days pending a hearing on his employment status.

78.    Pursuant to the Port Authority's own contract, in Article XXVIII of the Memorandum of Agreement between the Port Authority of New York and New Jersey and the Port Authority Benevolent Association, Inc. (PAPBA), no employee shall be suspended without pay for more than 30 days.  (See Exhibit D).

79.    Plaintiff is further entitled to missed overtime opportunities during the pendency of his suspension.

80.    In addition to the loss of back pay and missed overtime opportunities, Plaintiff Giovanni Rivera was deprived of an opportunity to seek outside employment while he has been suspended.

81.     Pursuant to the Memorandum of Agreement between the Port Authority of New York and New Jersey and the Port Authority Benevolent Association, Inc. (PAPBA),  Plaintiff Giovanni Rivera was entitled to receive representation for his hearing determining the status of his employment, as is further delineated in the mission statement of the PAPBA.

82.     The actions stated above violated 42 U.S.C. § 1983, because the actions deprived plaintiff of his property without due process of law, in violation of the Fifth and Fourteenth Amendments of the U.S. Constitution.

83.     As a result of the foregoing, Plaintiff is entitled to his full back pay and lost benefits, including lost opportunities for overtime compensation, and is further entitled to punitive damages against PORT AUTHORITY, PAPD, PAPBA and the individual defendants in the amount of FIFTEEN MILLION ($15,000,000.00) DOLLARS, plus reasonable attorney's fees, costs and disbursements of this action.

**AS AND FOR A SECOND CAUSE OF ACTION**
*(Conspiracy under 42 U.S.C. §1985 (2) and (3))*

84.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "83" with the same force and effect as if fully set forth herein. PAPD internal affairs was in constant communication with the Westchester County District Attorney's office.   Correspondence reveals that the District Attorney's office as well as PAPD internal affairs were both aware of plaintiff's cross-complaint against his accuser noting that this would delay the trial, but nevertheless, the case would be moved before another judge, as the assigned judge did not hear trials.

85.     PAPD internal affairs maintained communication with various PAPD employees, including PAPBA.

86.    During the same period of time, communications were maintained between plaintiff and other parties with the PAPBA through Police Officer Frank Conti, that made it abundantly clear, that PAPBA was biased against plaintiff.

87.    PAPBA maintained a "Judiciary Committee" which Officer Frank Conti, 1st Vice President of PAPBA was in charge of and/or was associated with.

88.    PAPBA maintained a PAC which Officer Frank Conti, 1st Vice President of PAPBA was in charge of and/or was associated with.

89.    During the course of the trial, Plaintiff requested a trial by jury, however, upon his clear request for same, he was denied a jury trial and was moved to a bench trial before the same judge.

90.    PAPBA further influenced attorneys that plaintiff wanted to retain for his representation.

91.    Correspondence and communication between the PAPD, the District Attorney's office and PAPBA created a conspiracy against plaintiff, causing him to be deprived of his right to a jury trial, causing him to suffer severe consequences.

92.    As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against PORT AUTHORITY, PAPD, PAPBA and the individual defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.


### AS AND FOR A THIRD CAUSE OF ACTION
*(False Arrest/Unlawful Imprisonment under 42 U.S.C. § 1983)*

93.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "92" with the same force and effect as if fully set forth herein.

94.     Defendants detained Plaintiff without probable cause, causing Plaintiff to be unlawfully imprisoned and/or to be falsely arrested.

95.     As a result of the foregoing conduct, Plaintiff suffered physical and mental injury, together with embarrassment, humiliation, mental anguish, shock, fright and loss of freedom.

96.     As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against PORT AUTHORITY, PAPD, PAPBA and the individual defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR A FOURTH CAUSE OF ACTION
*(Harassment, Intimidation and Hostile work environment under*
*42 U.S.C. § 1981 and 42 U.S.C. §1983)*

97.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "96" with the same force and effect as if fully set forth herein.

98.     All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of state law.

99.     During the course of Plaintiff's employment with defendant PAPD, the defendant, by and through its agents, servants and employees, discriminated against the Plaintiff in the terms, conditions, and privileges of employment in various ways, in substantial part because of his race, in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § Section 1981 and 42 U.S.C. § 1983.

100.     During the course of Plaintiff's employment with defendant PAPD, the workplace was permeated with harassment, intimidation, ridicule, and insult, that was sufficiently severe or pervasive to alter the conditions of the victim's employment and created a hostile and abusive working environment.

101.     The incidents complained of were continuous and concerted, such that they were deemed pervasive.

102.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, and supervisors, with the entire actual and/or apparent authority attendant thereto, and with the intent to harass and intimidate defendant.

103.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures and the rules of the PORT AUTHORITY and PAPD and PAPBA, all under the supervision of ranking officers of said agencies.

104.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

105.     As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against PORT AUTHORITY, PAPD, PAPBA and the individual defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR A FIFTH CAUSE OFACTION
### *(Tortious Interference 42 U.S.C. §1981 and 42 U.S.C. §1983)*

106.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "105" with the same force and effect as if fully set forth herein.

107.     As an employee of PAPD, plaintiff is entitled to receive health benefits, worker's compensation benefits as well as deferred compensation retirement benefits.

108.     During the course of plaintiff's employment, plaintiff Giovanni Rivera suffered

an on the job injury twice.  Although Worker's Compensation should have paid for his medical

treatment, his medical bills were kicked back and not paid.  There is no procedure in place

notifying where bills should go and no one knows where to send it.  PAPBA and PAPD violated

Department of Labor procedures in that there is nothing posted for employees to be informed of

the correct procedures regarding Worker's Compensation.  Shortly after Plaintiff began

employment with the PAPD, plaintiff effected an arrest on a man in the Port Authority Bus

Terminal.   The man notified the arresting officers including the plaintiff herein that he was HIV

positive as the arresting officers were in contact with the man's blood.  The bill for HIV testing

and treatment has not yet been paid, nearly 8 years after the incident.   It appears that only the

bills of the officers who have ties with superiors have their bills paid, but the claims of  those

PAPD employees who do not have the influence of a superior do not get the same treatment and

their bills do not get paid.

109.     Further after plaintiff's arrest, all of plaintiff's medical insurance claims were

rejected by PAPD for bills related to his daughter's medical care and treatment from three years

earlier, and bills related to his wife's medical care and treatment after the loss of their child.

None of plaintiff's medical claims were ever rejected prior to plaintiff's arrest.

110.     During the course of his employment, plaintiff contributed to a 401(k) deferred

compensation plan.  Plaintiff is permitted to withdraw funds from this account, however, plaintiff

was denied permission to take out the money he contributed.

111.     Plaintiff verily avers that the above referenced actions of PAPD, PAPBA their

agents, servants and employees who tortiously interfered with third parties, were intentional acts

of harassment against Plaintiff, Giovanni Rivera.

112.    Defendants' actions denied plaintiff his right to receive benefits he was entitled to and thus deprived him of his property interests, affecting him and his family in an extremely draconian manner.

113.    As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against PORT AUTHORITY, PAPD, PAPBA and the individual defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR A SIXTH CAUSE OFACTION
*(Deprivation of Federal Civil Rights under 42 U.S.C. §1981 and 42 U.S.C. §1983)*

114.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "113" with the same force and effect as if fully set forth herein.

115.    All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of state law.

116.    All of the aforementioned acts deprived Plaintiff, a member of racial minority, of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments of the Constitution of the Untied States of American, and in violations of 42 U.S.C. § 1981 and 42 U.S.C. § 1983.

117.    All of the acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, and supervisors, with the entire actual and/or apparent authority attendant thereto, and with the intent to discriminate on the basis of race.

118.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices,

procedures and the rules of the PORT AUTHORITY, PAPD and PAPBA all under the supervision of ranking officers of said agencies.

119.    Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

120.    As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against PORT AUTHORITY, PAPD, PAPBA and the individual defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
*(Failure to Intervene under 42 U.S.C. §1983 and 42 U.S.C. §1986)*

121.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "120" with the same force and effect as if sully set forth herein.

122.    All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of state law.

123.    Defendants' failed to investigate, failed to protect plaintiff and wrongfully and unjustifiably arrested plaintiff after having had a realistic opportunity to intervene and prevent plaintiff from having his constitutional rights violated and prevent harm from occurring.

124.    As a result, plaintiff's constitutional rights, privileges and immunities were violated and is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the PORT AUTHORITY, PAPD, PAPBA and individual defendants in an amount to be fixed by a jury, plus attorney's fees, costs and disbursements of this action.

## AS AND FOR A NINTH CAUSE OF ACTION
*(Supervisory Liability under 42 U.S.C. §1983)*

125.    Plaintiff repeats, reiterates, realleges each and every allegation contained in paragraphs "1" through "124 ", with the same force and effects as if fully set forth herein.

126.    The supervisory defendants, personally caused Plaintiff's constitutional injury by being deliberately or consciously indifferent to the rights of others, namely Plaintiff Rivera herein, in failing to properly supervise and train their subordinate employees.

127.    As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the PORT AUTHORITY, PAPD, PAPBA individual defendants in an amount to be fixed by a jury, plus attorney's fees, costs and disbursements of this action.

## AS AND FOR A TENTH CAUSE OF ACTION
*(Negligent & Intentional Infliction of Emotional Distress
Under the laws of the State of New York)*

128.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "127" with the same force and effect as if fully set forth herein.

129.    The aforementioned conduct was extreme and outrageous, intentional and reckless, and exceeded all reasonable bounds of decency.

130.    The aforementioned conduct was committed while Defendants were acting within the scope of their employment by the Defendants PORT AUTHORITY, PAPD and PAPBA.

131.    The aforementioned conduct occurred for the sole purpose of causing severe and emotional distress to Plaintiff.

132.    As a result of the defendants' conduct, Plaintiff suffered mental anguish, stress, anxiety, humiliation, embarrassment, shock, fright, permanent injury to his reputation and loss of freedom.

133.    As a result of the foregoing, plaintiff is entitled to compensatory damages in the amount of FIVE MILLION ($5,000,000.00) DOLLARS, and is further entitled to punitive damages against defendants PORT AUTHORITY, PAPD, PAPBA, and the individual defendants in the amount of FIFTEEN MILLION ($15,000,000.00) DOLLARS, plus reasonable attorneys fees, costs and disbursement of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff GIOVANNI RIVERA, prays that this Court enter preliminary and permanent injunctive relief, and enter judgment on the FIRST CAUSE OF ACTION:

a)  Reinstating Plaintiff to his position in the Port Authority Police Department;

b)  Awarding Plaintiff full back pay and lost benefits, including lost opportunities for overtime compensation;

c)  Award Plaintiff punitive damages in the sum of FIFTEEN MILLION ($15,000,000.00) DOLLARS .

d)  Awarding Plaintiff attorneys' fees, costs and disbursements pursuant to 28 U.S.C. §1998; and

e)  Granting such other and further relief as this Court deems just and proper.

WHEREFORE, Plaintiff GIOVANNI RIVERA respectfully demands judgment against Defendants, jointly and severally, on the TENTH cause of action as follows:

a)  Awarding Plaintiff compensatory damages in the amount of FIVE MILLION ($5,000,000) DOLLARS;

b) Awarding Plaintiff punitive damages in the amount of FIFTEEN MILLION ($15,000,000) DOLLARS;

c) Awarding Plaintiff attorneys' fees, costs and disbursements pursuant to 28 U.S.C. §1998; and

d) Granting such other and further relief as this Court deems just and proper.

WHEREFORE, Plaintiff GIOVANNI RIVERA respectfully demands judgment against defendants, jointly and severally, on the SECOND, THIRD, FOURTH,  FIFTH, SIXTH, SEVENTH, EIGHTH and NINTH causes of action as follows:

a) Awarding compensatory damages in an amount to be determined by a jury;

b) Awarding punitive damages against the defendants, jointly and severally in an amount to be determined by a jury;

c) Awarding plaintiff attorneys' fees, costs, and disbursements pursuant to 28 U.S.C. §1998; and

d) Granting such other and further relief as this Court deems just and proper.

Dated: Bronx, New York
April 7 , 2021

Respectfully submitted,

LAW OFFICE OF
STEPHEN B. KAUFMAN, P.C.

By:  John V. Decolator, Esq. (SD-3465)
Attorneys for Plaintiff
3397 East Tremont Avenue
Bronx, NY  10461
(718) 822-0500

## VERIFICATION

STATE OF NEW YORK)
                              ss:
COUNTY OF BRONX   )


    GIOVANNI RIVERA, being duly sworn, says:

    I am a Plaintiff in the action herein:  I have read the annexed Complaint and know the

contents thereof, and the same are true to my knowledge, except those matters therein which are

stated to be alleged upon information and belief, and as to those matters I believe them to be true.

My belief as to those matters therein not stated upon knowledge, is based upon facts, records, and

other pertinent information contained in my personal files.


DATED:  Bronx, New York
             April 7th, 2021

                                                    _____
                                                         Giovanni Rivera



Subscribed and sworn to before me
this   7th   day of April, 2021

_____
    NOTARY PUBLIC


    CATHERINE ZIEGLER
Commissioner of Deeds, City of New York
            No. 3-10053
    Cert. Filed in New York County
Commission Expires on 03-01-2022